TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING EN BANC








NO. 03-04-00220-CV






Bradford E. Larimore, Appellant


v.


Employees Retirement System of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN302090, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





O P I N I O N




 We withdraw the prior opinion and judgment dated January 20, 2006, and the
following opinion is substituted.

 Larimore appeals the judgment of the district court, which affirmed a final order by
the Employees Retirement System of Texas Board of Trustees (the "Board") denying his application
for occupational disability benefits. (1) In four issues on appeal, Larimore contends that the Board
erred in adopting findings of fact and conclusions of law different from the ones proposed by the
administrative law judge ("ALJ"), that the Board's order was not supported by substantial evidence,
and that he is entitled to attorney's fees and costs of court. We will affirm the judgment of the
district court.


BACKGROUND


 Larimore was employed by the Texas Department of Corrections as a corrections
officer. In December 1998, as he was going up a flight of stairs in a corrections unit, Larimore
slipped on the stairs and "did the splits" but was able to grab the handrail and prevent himself from
falling down the stairs. He pulled himself up and claims he immediately felt pain in his lower and
upper back. As a result of the slip, Larimore sustained an injury to his back. Larimore was
ultimately diagnosed as suffering from radiculopathy (pain radiating into his extremities resulting
from the back injury) and from disc protrusions or herniations in his cervical spine at vertebrae C4-5
and in his lumbar spine at vertebrae L3-4 and L4-5. Larimore applied to the Employees Retirement
System ("ERS") for occupational disability retirement benefits. (2) See Tex. Gov't Code Ann.
§§ 811.001-815.512 (West 2004).

 Larimore's application for benefits was governed by former section 811.001(12) of
the government code, which defined an occupational disability as a disability arising "from an injury
or disease that directly results from a specific act or occurrence determinable by a definite time and
place and directly results from a risk or a hazard peculiar to and inherent in a duty that arises from
and in the course of state employment." See Act of May 23, 2001, 77th Leg., R.S., ch. 1231, § 1,
2001 Tex. Gen. Laws 2827, 2827; Act of May 24, 2003, 78th Leg., R.S., ch. 842, § 4, 2003 Tex.
Gen. Laws 2633, 2636 ("former Tex. Gov't Code § 811.011(12)"). The Medical Board certified that
Larimore was permanently impaired and unable to further perform his job requirements due to
cervical, thoracic, and lumbar spondylosis (degeneration of the spine). See Tex. Gov't Code Ann.
§ 814.203. The Medical Board also concluded that the injury he sustained at the Stevenson unit was
not the primary cause of Larimore's incapacity. Rather, the Medical Board concluded Larimore's
incapacity resulted from a pre-existing condition suffered in an automobile collision (3)
 and from
arthritis. It concluded that the most recent injury aggravated the pre-existing condition and would
not, on its own, have rendered Larimore permanently incapacitated.

 The ERS Executive Director denied Larimore's application for benefits on the
grounds that Larimore's injury did not satisfy the requirements specified in former government code
section 811.001(12). The Executive Director stated that, based on the conclusions of the Medical
Board, "ERS is unable to conclude that [Larimore's] disability directly results from a specific act or
occurrence determinable by a definite time and place" as required by statute. Larimore appealed the
decision of the Executive Director to the Board, and a hearing was held before an ALJ. See Tex.
Gov't Code Ann. §§ 815.001, .101 (stating Board is responsible for general administration of
retirement system). In her proposal for decision, the ALJ recommended that Larimore's appeal be
granted, that he should be awarded disability benefits, and that the evidence indicated that the at-work injury was the primary cause of Larimore's disability.

 After the ALJ issued her proposal, ERS Staff filed a list of exceptions to the proposal
and subsequently filed alternative findings and conclusions, which were ultimately adopted by the
Board. The Board determined that Larimore did not prove that the injury he sustained from his fall
was the primary cause of his disability. In its order, the Board denied Larimore's claim for
occupational disability retirement benefits and adopted the alternate findings and conclusions
submitted by ERS staff. (4) 

 Larimore appealed to the district court, which affirmed the decision of the Board. See
Tex. Gov't Code Ann. § 815.511(f) (allowing aggrieved party to appeal decision to district court for
judicial review under substantial evidence review). This appeal followed.


DISCUSSION


 On appeal, Larimore contends that (1) the Board erred by adopting the alternative
findings and conclusions proposed by ERS staff; (2) the Board's order was not supported by
substantial evidence; (3) the Board did not have the authority to reject the findings and conclusions
in the ALJ's proposal because they were supported by substantial evidence; and (4) the district court
erred by not allowing him to recover attorney's fees, costs of court, and interest.


Alternative Findings and Conclusions

 In his first issue on appeal, Larimore contends the Board erred in adopting the
findings and conclusions proposed by the ERS staff because (1) none of the requirements of section
67.91(b) of title 34 of the administrative code were met; (2) the Board abused its discretion; (3) the
Board acted arbitrarily and capriciously; (4) the Board breached its fiduciary and contractual duties
in light of previous cases before this Court; and (5) the Board's actions were legally reprehensible
and actionable.

 Larimore contends that the at-work injury was the primary cause of his disability; 
that, prior to his injury, he had been able to perform all of his job responsibilities and was not
disabled; and that prior to the accident there was no evidence of an injury to his lumbar spine,
particularly the disc protrusions or herniations of vertebrae L3-4 and L4-5.

 The legislature has limited the discretion of the Board to modify recommendations
of an ALJ in a contested case hearing by enacting section 815.511 of the government code. 
Although the code specifically grants the Board the power to "modify, refuse to accept, or delete any
proposed finding of fact and conclusion of law contained in a proposal for decision submitted by an
[ALJ]," the statute requires the Board to state its reasoning for the changes in writing and allows the
Board to adopt rules governing its review of contested case hearings. Tex. Gov't Code Ann.
§ 815.511(d). The Board's rules further guide the Board's discretion. See 34 Tex. Admin. Code
§ 67.91(b). The Rules permit the Board to:


modify or delete any proposed finding of fact or conclusion of law, or make
alternative findings of fact or conclusions of law, if it determines that the proposal
for decision submitted by the examiner, or a proposed finding of fact or conclusion
of law contained therein, is:


(1) clearly erroneous or illogical;


(2) is against the weight of the evidence;


(3) is based on misapplication of the rules of evidence or insufficient review of the
evidence;


(4) is inconsistent with the terms or intent, as determined by the board, of benefit
plan or insurance policy provisions; or


(5) is not sufficient to protect the public interest, the interests of the plans and
programs for which the board is trustee, or the interests, as a group, of the
participants covered by such plans and programs. The order shall contain a
written statement of the reason and legal basis for each change made based on
the foregoing policy reasons. 


Id. Under these rules, the Board may not modify, delete, or add findings of fact and conclusions of
law merely because the Board disagrees with the ALJ; the Board's changes must be justified under
the rule with its reasons stated in writing. See id.

 Our review of the Board's findings of fact and conclusions of law focuses on whether
the Board's stated reasons for modifying the proposal were consistent with its discretion under
section 815.511 of the government code and section 67.91 of title 34 of the administrative code. An
ALJ's findings of fact, even adjudicative facts, are not completely insulated from review by the
Board. While it is not the Board's function to reweigh the evidence and change adjudicative facts
after a hearing before an ALJ, the Board may change adjudicative facts if they are improper under
rule 67.91(b). Flores v. Employees Ret. Sys. of Tex., 74 S.W.3d 532, 551 (Tex. App.--Austin 2002,
pet. denied). 

 The burden of establishing entitlement to disability benefits is on the applicant. Id.
at 550. In describing this burden, this Court has explained:


[A]n employee seeking occupational disability retirement benefits must establish that
a specific act or occurrence determinable by a definite time and place is the cause-in-fact of her disability, namely, that the injury in a natural and continuous sequence
produced the disability, and that without it, the disability would not have occurred. 
Moreover, the employee must prove that the at-work injury is the primary cause of
the disability. A preexisting condition that becomes symptomatic only at the time of
trauma or that does not primarily cause the disability does not break the causal chain
between the at-work injury and the disability. This is true even if a preexisting
condition makes the injury more difficult to treat or more disabling. A preexisting
condition that substantially contributes to a disability, however, such that the
preexisting condition is the primary cause of the disability, will defeat a claim for
occupational disability retirement.



Id. (citations omitted). When there are preexisting mental or physical conditions, the claimant must
establish that the traumatic incident is the primary cause of the disability. Langford v. Employees
Ret. Sys. of Tex., 73 S.W.3d 560, 567 (Tex. App.--Austin 2002, pet. denied). If the medical
evidence establishes that a preexisting condition is the primary cause of incapacity, the disability
does not directly result from a specific act or occurrence determinable by a definite time and place. 
Id.

 While acknowledging that claimants carry the burden of proving their injury was the
primary cause of their disability, Larimore contends that the Board, if it chooses to contest the claim,
has the burden of proving something else was the sole cause of the disability. Further, Larimore
contends that the extent and nature of a preexisting condition is irrelevant and contends that
consideration of whether the injury would have caused a permanent disability in a healthy individual
is also irrelevant. Finally, Larimore asserts that it does not matter if the issue is framed as proximate
cause, direct cause, or primary cause; rather, all that matters is whether the last injury produced the
disability, in which case the claimant is entitled to whatever "benefits flow from that injury."

 We disagree with contentions that challenge our discussion of the claimant's burden
in Flores and Langford. The burden is on the claimant to prove the work injury is the primary cause
of his injury. Flores, 74 S.W.3d at 550; Langford, 73 S.W.3d at 567. If the burden is not met, the
claimant is not entitled to receive disability benefits. In addition, denying a claimant coverage
because of a preexisting condition is proper if the preexisting condition, even an asymptomatic
condition, is the primary cause of the disability. Flores, 74 S.W.3d at 550.

 In support of her ultimate recommendation that Larimore's disability directly results
from a specific act or occurrence determinable by a definite time and place, the ALJ refers to the
testimony of Dr. Swann, a neurosurgeon who treated Larimore for years and who performed surgery
on Larimore's neck after Larimore was injured in an automobile collision in 1988. Dr. Swann
testified that Larimore had never had lower back problems nor complained of lower back problems
prior to the at-work injury and testified that the fall was the "primary precipitant of the symptoms
[Larimore] had in his lower back." In addition, Dr. Swann stated that, were it not for the at-work
injury, Mr. Larimore would probably still be able to work as a corrections officer. Dr. Swann further
opined that the condition of Larimore's lumbar spine would be disabling even if Larimore did not
have a preexisting cervical degeneration condition. Finally, Dr. Swann testified that he believed
Larimore's preexisting degenerative condition was not the primary cause of his disability but was
a "contributing factor that made him more susceptible to the injury."

 The ALJ also referred to various medical reports. Although noting that the record
"clearly documents Mr. Larimore's preexisting cervical degeneration condition," the ALJ stated that
there are no treatment records or MRIs of Larimore's lumbar spine until after the accident and that
a CAT scan conducted after Larimore slipped on the stairs showed disc herniations in Larimore's
lumbar spine. While acknowledging that Larimore had stated in a medical questionnaire that he
experienced lower back pain in 1996 due to a previous incident at work, the ALJ concluded that
Larimore's lumbar spine was asymptomatic prior to the at-work injury based on Larimore's
testimony that he was mistaken when he filled out the questionnaire and that he had never
experienced any difficulties in his lower back until the at-work injury, based on Larimore's
supervisor's testimony that Larimore had never complained of lower back pain until after the at-work
injury, and based on Larimore only receiving treatment on his cervical spine prior to the at-work
injury. Finally, the ALJ referenced the results of an MRI of Larimore's cervical spine conducted
over a year before the injury occurred. The MRI indicated Larimore had only very mild to mild
degeneration in his spine and did not indicate the presence of stenosis (the presence of a small nerve
passageway). 

 The Board did not agree with the recommendation of the ALJ and adopted alternative
findings and conclusions proposed by ERS staff. The alternate findings and conclusions referred to
evidence presented through testimony and in Larimore's medical records as justification for 
modifications to the ALJ's findings and conclusions and cited to the specific provisions of the
government code and the administrative code that authorize the Board to make such changes. 
Specifically, the new findings and conclusions state the modifications were made pursuant to section
815.511(a) of the government code and section 67.91(b)(1), (2), and (3) of the administrative code
because the original findings were "clearly erroneous, against the weight of the evidence and based
on an insufficient review of the evidence." Similarly, conclusions (4) and (7) were modified under
section 67.91(b)(4) and (5) of the administrative code because the original conclusions were
"inconsistent with the terms or intent of the occupational disability retirement plan" and were "not
sufficient to protect the interests of the plan or the interests of the participants who are covered by
the plan." 

 The following list contains the alternate findings of fact and conclusions of law that 
were adopted by the Board. For each finding and conclusion, the stricken language shows portions
that were removed from the original findings and conclusions proposed by the ALJ, and the
underlined language shows additions that were made by the ERS staff:


Findings of Fact


10. As shown by a 1999 Myelogram/CT examination, Mr. Larimore has disc
herniations at the L3-4 and L4-5 level of the lumbar spine [caused by his at work
injury].


 . . . .


14. Prior to the at-work injury Mr. Larimore's preexisting conditions were
[a]symptomatic; he [never] experienced [any] pain in his lumbar spine in 1996
which he reported to his treating physician, Dr. Swann, in writing on October
26, 1999[, nor did he receive any treatment]


15. Mr. Larimore's preexisting degenerative conditions in his lumbar spine were
substantial contributing factors in causing Appellant's incapacity and worsened
the effects of the at-work injury on his lumbar spine[, but were not primarily
responsible for his disability].


16. Mr. Larimore's disability does not directly result[s] from a specific act or
occurrence determinable by a definite time and place.


Conclusions of Law


  4. Mr. Larimore's disability does not result[s] from a specific act or occurrence
determinable by a definite time and place . . . .


 5. The at-work injury was not the primary cause of Mr. Larimore's disability.


 . . . .


 7. Mr. Larimore's application for occupational disability benefits should not be
granted. (5)



 In support of the modifications, the proposed findings and conclusions adopted by
the Board refer to Larimore's medical records and to the depositions of Larimore and various
doctors. First, the alternate proposal cites to statements by Dr. Swann that, in addition to the at-work
injury, there were other causes of Larimore's disability, including preexisting degenerative changes
not resulting from the at-work injury and congenital stenosis, which were aggravated by the at-work
injury and made him more susceptible to disc herniation. Dr. Swann also testified that stenosis can
make a person more prone to suffer from radiculopathy and added that the at-work injury would not
have rendered Larimore incapacitated in the absence of Larimore's preexisting spinal degeneration. (6)

 Dr. Swann testified that Larimore probably had degeneration in his lumbar spine
before being injured at work; that Larimore probably had more degeneration than would be expected
for his age; and that Larimore's degeneration made him more susceptible to the injury he sustained. 
Dr. Swann also stated that the degeneration was a significant factor contributing to Larimore's
disability. Dr. Swann further opined that Larimore was suffering from arthritic changes to his
lumbar spine, which occurred over a prolonged period of time and were not caused by his at-work
injury. Finally, Dr. Swann testified that Larimore's incapacitating lumbar radiculopathy was caused
by a number of factors, including the disc herniations, degenerative changes, and congenital and
acquired stenosis.

 Regarding Larimore's cervical spine, Dr. Swann testified that the two cervical discs
he removed from Larimore's spine in 1988 were degenerated and that a person with degeneration
in one part of his spine commonly has degenerative changes in other parts of the spine as well. Dr.
Swann further commented that he fused some of the vertebrae in Larimore's cervical spine in 1988
and that fusing vertebrae renders the adjacent vertebrae more susceptible to injury. Dr. Swann also
stated that Larimore had degeneration of his cervical spine at the time Larimore was injured at work
and that degenerative changes in Larimore's neck contributed to Larimore's cervical disc herniation
sustained after the at-work injury. 

 The alternate proposal also refers to Larimore's medical records. First, it cites to the
medical questionnaire filled out by Larimore indicating that he experienced lower back problems two
years before his at-work injury and to testimony by Larimore in which he stated that he tried to
provide complete and accurate information on the questionnaire because he filled out the
questionnaire for the purpose of obtaining medical treatment for his back. The alternate proposal
also refers to medical reports written before and after the 1998 injury indicating Larimore's cervical
spine had degenerated and to medical reports and MRI results indicating Larimore's lumbar spine
had arthritic changes, degeneration, and mild congenital stenosis. Finally, the alternate proposal cites
to Dr. Swann's notes taken in 2001 referring to multiple levels of degernative change in Larimore's
spine, including his lumbar area, and to congenital stenosis present in Larimore's lumbar spine
especially at vertebrae L4-5 and L3-4. 

 Based on this evidence, we cannot conclude that the Board abused its discretion in
determining that the original findings and conclusions were against the weight of the evidence and
in modifying the relevant findings and conclusions accordingly. See 34 Tex. Admin. Code
§ 67.919(b)(2). In addition, the alternate proposal provided statements containing the reasoning and
legal basis upon which the modifications were made. See Tex. Gov't Code § 815.511; 34 Tex.
Admin. Code § 67.91(b). Accordingly, we conclude that the Board's actions were within its
statutory authority and satisfied the statutory and rule requirements for modification of an ALJ's
proposal. (7) 

 Larimore also contends that the Board's actions did not comply with previous
decisions issued by this Court. Specifically, Larimore cites to Flores v. Employees Ret. Sys. of Tex.,
74 S.W.3d 532 (Tex. App.--Austin 2002, pet denied) and to Langford v. Employees Ret. Sys. of
Tex., 73 S.W.3d 560 (Tex. App.--Austin 2002, pet. denied), in which we concluded the Board
improperly modified the proposals issued by the ALJs. Flores was permanently disabled after being
involved in a motor vehicle collision. Flores, 74 S.W.3d at 537. Langford slipped and fell on the
kitchen floor of a correctional facility and was permanently disabled. Langford, 73 S.W.3d at 563-64. In both cases, the ALJs recommended awarding disability benefits, but the Board modified the
ALJs' proposals and denied benefits to both Flores and Langford. Flores, 74 S.W.3d at 538-39;
Langford, 73 S.W.3d at 564.

 These cases are distinguishable. Although both Langford and Flores suffered from
pre-existing spinal degeneration that contributed to their incapacitation, their doctors testified that
the amount of degeneration they had was common in people of their age. Flores, 74 S.W.3d at 540-41; Langford, 73 S.W.3d at 568. Neither Langford nor Flores had reported problems with their
backs prior to the at-work injuries. See Flores, 74 S.W.3d at 541; Langford, 73 S.W.3d at 568, 570. 
Further, Langford's doctor testified that the injury Langford suffered at work would have been
disabling even without the pre-existing degeneration. Langford, 73 S.W.3d at 568. In addition, the
ERS staff in this case cited to evidence supporting their alternative findings and conclusions. See
id. at 568, 570 (medical board did not refer to evidence supporting its conclusion that was different
from ALJ's).

 In this case, Larimore had reported problems with his lower back prior to the at-work
injury, had repeated problems with his cervical spine prior to the injury, and had more degeneration
in his spine than would be expected for someone his age. Further, both Dr. Swann and the Medical
Board agreed that the injury Larimore sustained at work would not have been disabling without his
preexisting condition.

 In addition, in Flores, the Board did not comply with rule 67.91 because it did not
give reasons for some of the alterations made to the proposal and because the reasons given for other
modifications, e.g., for clarification and because the finding was irrelevant, were not allowed under
rule 67.91. Flores, 74 S.W.3d at 542. In the present case, the bases for modification stated by the
Board were authorized under rule 67.91 and were fully explained.

 Further, this Court's approval of the Board's refusal to adopt the ALJ's proposal in
Broadhurst v. Employees Ret. Sys. of Tex., 83 S.W.3d 320 (Tex. App.--Austin 2002, pet. denied),
is instructive. In that case, the ALJ recommended awarding Broadhurst retirement benefits, but the
Board did not adopt the ALJ's proposal and issued an order denying Broadhurst benefits. Id. at 322. 
This Court affirmed the decision of the Board, finding there was evidence in the record
demonstrating a reasonable basis for the Board's conclusion that Broadhurst did not qualify for
retirement benefits. Id. at 325-26. 

 We conclude that the Board's actions complied with the governing statute and rule. 
Accordingly, we overrule Larimore's subissues arguing that the Board's actions were an abuse of
discretion and power, arbitrary and capricious, breaches of fiduciary and contractual obligations to
employees who are members of ERS, and legally actionable.

 Larimore also argues he was denied due process because the Board was predisposed
to deny Larimore disability benefits. In addition, Larimore contends he was impermissibly denied
benefits because of a preexisting condition. In support of this argument, Larimore points to the
recommendation of the Medical Board, the list of exceptions filed by ERS staff, and the alternative
findings and conclusions proposed by ERS staff, all of which recommended denying him benefits. 
Larimore contends that the positions taken in these various proposals did not comport with our
decisions in Flores, Langford, and Broadhurst and did not properly account for the supreme court's
decision to deny petition for review in these cases. Rather, Larimore contends the recommendations
of the Medical Board and the ERS Staff were made under the Board's policy existing prior to the
Flores decision that required an employee to establish that "'an occupational trauma is the direct
cause of the [employee's] disability without regard to a preexisting mental or physical condition.'"
See Flores, 74 S.W.3d at 543. This Court rejected the Board's previous policy because the policy
would prohibit employees with preexisting conditions from receiving benefits even if the at-work
injury is the primary cause of the disability. Id. at 548.

 The list of exceptions filed by ERS staff asserted that Larimore did not satisfy his
burden of showing that the at-work injury was the primary cause of his disability and asserted that
a claimant was required to prove the disability under the standard adopted by the Board prior to our
decision in Flores. However, the alternative findings and conclusions, the Board's order, and the
Medical Board's recommendation do not mention the Board's prior interpretation of section
811.001(12). Further, evidence was referenced in the alternative findings and conclusions to show
that Larimore was not entitled to benefits because his preexisting condition was the primary cause
of his disability. Finally, the modifications satisfied the statutory and rule requirements and the
requirements specified in Flores. See Tex. Gov't Code Ann. § 815.511(d); 34 Tex. Admin. Code
§ 67.91(b); Flores, 74 S.W.3d at 551. We conclude Larimore was not denied due process and was
not impermissibly denied benefits due to a preexisting condition. Therefore, we overrule Larimore's
first issue on appeal.


The Board's Order was Supported by Substantial Evidence

 In his second issue on appeal, Larimore asserts the findings and conclusions adopted
by the Board were not supported by substantial evidence or any evidence at all. In a substantial-evidence review, we may not substitute our judgment for that of the agency on matters committed
to agency discretion. Tex. Gov't Code Ann. § 2001.174 (West 2000); H.G. Sledge, Inc. v.
Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 602 (Tex. App.--Austin 2000, pet. denied). 
Under a substantial-evidence review, we presume that the agency's order is supported by substantial
evidence, and the appellant has the burden of overcoming this presumption. Graff Chevrolet Co.,
Inc. v. Texas Motor Vehicle Bd., 60 S.W.3d 154, 159 (Tex. App.--Austin 2001, pet. denied). The
administrative procedure act gives reviewing courts the authority to "test an agency's findings,
inferences, conclusions, and decisions to determine whether they are reasonably supported by
substantial evidence considering the reliable and probative evidence in the record as a whole." Id.;
see Tex. Gov't Code Ann. § 2001.174(2)(E). Courts must affirm administrative findings in
contested cases if there is more than a scintilla of evidence to support them. Broadhurst, 83 S.W.3d
at 324. Even if the record evidence preponderates against the agency's decision, the evidence may
still be enough to satisfy a substantial-evidence review. Graff, 60 S.W.3d at 159. However, the
agency may not act arbitrarily and without regard to the facts. H.G. Sledge, 36 S.W.3d at 602.

 A substantial-evidence review does not require us to conclude the agency reached the
correct conclusion; rather, substantial-evidence review is satisfied if "some reasonable basis exists
in the record for the agency's action." Graff, 60 S.W.3d at 159. An agency's actions will be upheld
if "the agency's action is such that reasonable minds could have reached the conclusion the agency
must have reached in order to justify its action." Id. If a finding is properly supported and supports
the agency's action, the court will uphold the agency's action despite the presence of irrelevant or
unsupported findings in the agency's order. Texas Rivers Prot. v. Texas Natural Res. Conservation
Comm'n, 910 S.W.2d 147, 155 (Tex. App.--Austin 1995, writ denied).

 In addition to the evidence listed under issue one, there was additional testimony
given by Dr. Swann supporting the Board's position. Dr. Swann testified that Larimore had an
ongoing, degenerative condition prior to the 1998 fall. In addition, Dr. Swann stated that Larimore
was suffering from ligamentum flavum hypertrophy, which occurs over a substantial period of time
and can narrow the spinal canal and result in radiculopathy. Finally, Dr. Swann noted that Larimore
had a calcium build up, or an osteophyte, in his cervical spine in 1988 caused by degeneration, that
the presence of one osteophyte in one part of the spine indicates there might be others in other parts
of the spine, and that osteophytes can cause radiculopathy if they occur in certain locations. 
Similarly, a CAT scan conducted on Larimore in 1999 indicated the presence of osteophytes in his
cervical spine. Finally, the Medical Board concluded that Larimore's disability was caused by the
aggravation of preexisting spinal degeneration. (8) 

 We conclude that a reasonable basis existed in the record for the Board's conclusion
that Larimore's at-work injury was not the primary cause of his disability, that the findings and
conclusions regarding the first prong of former section 811.001(12) properly support the Board's
action, and that the Board's order and the relevant findings and conclusions were supported by
substantial evidence. Therefore, we overrule Larimore's second issue on appeal.


The ALJ's Findings and Conclusions 

 In his third issue, Larimore asserts that the findings and conclusions of the ALJ were
supported by substantial evidence, and, therefore, the Board did not have the authority to reject the
ALJ's findings and conclusions. In support of this argument, Larimore cites to Montgomery Indep.
Sch. Dist. v. Davis, 34 S.W.3d 559 (Tex. 2000). In Montgomery, the school district decided not to
renew Davis's teaching contract. Id. at 560. An independent hearing examiner heard Davis's appeal 
and concluded the district failed to prove the reasons for nonrenewal. Id. at 561. The Board of
Education rejected the conclusion of the hearing examiner and made additional findings of fact. Id.
at 562. The governing statute allowed the Board to reject or change the hearing examiner's finding
of fact only if the finding was not supported by substantial evidence. Id. at 563. The court noted that
the governing statute imposed stricter requirements on the Board of Education than the
Administrative Procedure Act imposes on other state agencies. Id. at 565.

 Under this statute, the Board's ability to modify, change, or propose alternative
findings and conclusions is not restricted to circumstances where the findings and conclusions are
not supported by substantial evidence. See Tex. Gov't Code Ann. § 815.511; 34 Tex. Admin. Code
67.91(b); Flores, 74 S.W.3d at 541-42. Section 67.91 of title 34 of the administrative code allows
the Board to modify, change, or alter the findings of the ALJ if at least one of five criteria is met. 
34 Tex. Admin. Code § 67.91(b). We have already concluded that the Board's actions in modifying
the ALJ's findings and conclusions complied with the governing statute and rule. Accordingly, we
overrule Larimore's third issue on appeal.


Sanctions

 In his final issue on appeal, Larimore asserts that the district court erred by not
allowing him to recover attorney's fees, court costs, and interest. Specifically, Larimore contends
that, because the Board failed to comply with its statutorily imposed duties, he is entitled to sanctions
for the Board's abuse of its discretion. However, because we have concluded that the Board properly
modified the ALJ's findings and conclusions and properly determined Larimore was not entitled to
disability benefits, we need not address Larimore's final issue. Accordingly, we overrule his final
issue on appeal.

CONCLUSION


 Because we have overruled all of Larimore's issues on appeal, we will affirm the
judgment of the trial court affirming the order of the Board.



 

 David Puryear, Justice

Before Chief Justice Law, Justices Kidd, B. A. Smith, Patterson, Puryear, Pemberton and Waldrop;

 Justice Kidd Not Participating

Affirmed

Filed: March 24, 2006

1. We will refer to several entities throughout this appeal. The "Board" refers to the agency's
board of trustees, which hears appeals of contested cases. See Tex. Gov't Code Ann. § 815.511
(West 2004). The "Medical Board" refers to the agency's medical board, which certifies
occupational disability retirement claimants as disabled. See id. §§ 814.203 (West 2004) (providing
that Medical Board issue certification of disability if it "finds that the member is mentally or
physically incapacitated for the further performance of duty and that the incapacity is likely to be
permanent"); 815.204(c) (West 2004) (Medical Board shall report its conclusion and
recommendation to executive director). We will refer to "ERS staff" to mean the agency's
representatives at the administrative hearing before the State Office of Administrative Hearings.
2. ERS provides four types of benefits for eligible state employees: service retirement,
occupational disability retirement, nonoccupational disability retirement, and death benefits. See
Tex. Gov't Code Ann. § 814.001 (West 2004).
3. Larimore was involved in an automobile collision in 1986. As a result of the collision,
Larimore had recurring problems with his neck, which ultimately resulted in Larimore having
surgery on his neck and in the removal of two herniated discs from his cervical spine.

4. See Tex. Gov't Code Ann. § 815.511(d) (West 2004) (authorizing Board to change or
delete findings of fact and conclusions of law contained in proposal issued by ALJ and to make
alternative findings and conclusion but requiring Board to state in writing its specific reasons for
changes); 34 Tex. Admin. Code § 67.91 (b) (2005) (requiring written explanation for changes and
limiting circumstances in which modifications are appropriate).
5. The Board also adopted additional findings and conclusions relating to the second portion
of the definition of an occupational disability listed in former section 811.001(12). To be awarded
benefits, a claimant had to satisfy both prongs of former section 811.001(12). See Broadhurst v.
Employees Ret. Sys. of Tex., 83 S.W.3d 320, 322 (Tex. App.--Austin 2002, pet. denied); Langford,
73 S.W.3d at 564. The second prong requires that the disability "directly results from an inherent
risk or hazard peculiar to a duty that arises from and in the course of state employment." Former
Tex. Gov't Code Ann. § 811.001(12). Because we conclude that the Board did not err by changing
the findings and conclusions relating to the first prong, we need not address the Board's changing
of the findings and conclusions addressing prong two.
6. The Medical Board agreed that, in the absence of Larimore's pre-existing condition, the
injury he sustained would not have been disabling.
7. Because we have concluded that the Board complied with the requirements of section
67.91(b)(2) of title 34 of the administrative code, we need not address Larimore's claims that the
Board's order did not satisfy subsections (1), (3), (4), and (5). See Tex. Admin. Code § 67.91(b).
8. Larimore contends that the opinion of the Medical Board, to the extent that it is a
conclusion of law rather than a medical opinion, should be ignored because it was not based on a
review of Larimore's medical records or on personal knowledge. The opinion of the Medical Board
is not binding or entitled to deference, but the opinion may be considered in our review of the
evidence supporting the decision of the Board as it is relevant. See Tex. Gov't Code Ann.
§§ 815.511(f) (allowing judicial review of Board's decision under substantial evidence review);
2001.174(E) (West 2000) (allowing reviewing court to reverse finding or conclusion of agency if not
supported by substantial evidence considering evidence in record as a whole).